DANIEL J. LAMBERT, JR. *vs.* LEROY L. LAMBERT *et al.*

DECEMBER 22, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a bill in equity to set aside a deed of real estate on two grounds, namely, insufficient delivery of the deed and lack of mental capacity of Daniel J. Lambert, Sr., the grantor. The cause was heard in the superior court on bill, answer and proof. Thereafter the trial justice rendered a decision denying and dismissing the bill. The complainant has appealed to this court from a final decree duly entered in accordance with the decision.

The property in question was the farm and homestead of Daniel J. Lambert, Sr., father of complainant Daniel J. Lambert, Jr., and of respondent Leroy L. Lambert. The other respondents are Ethel W. Lambert, Leroy's wife, and Clara A. Putnam, a daughter of Daniel J. Lambert, Sr. Hereinafter he will be called Mr. Lambert for convenience. Clara A. Putnam did not file an answer and a decree *pro confesso* was entered against her.

The question of Mr. Lambert's mental capacity is the subject of evidence which is in serious conflict. The trial justice having found that the grantor did possess sufficient mental capacity to execute the deed at the time and in the circumstances of this cause, such finding will stand under our well-established appellate rule that his findings on conflicting evidence will not be disturbed by us unless clearly wrong. For the purposes of this case we will assume the

correctness of that finding as there is another question which in our judgment is controlling.

That question is whether on the evidence of record there was a sufficient delivery of the deed in accordance with settled law. The evidence shows that Mr. Lambert, an educated man of strong religious convictions, owned and operated a poultry farm in Warwick in this state. His son Leroy, who also had received considerable schooling, had worked with him on the farm for many years. Leroy and his wife lived in their own house on land adjoining the farm. Complainant Daniel J. Lambert, a carpenter and builder who was unmarried, had always lived with his father and mother at the farmhouse and he continued to reside there for some time following his mother's death in November 1937. This latter event deeply affected Mr. Lambert, who was then seventy-seven years old. It is also quite evident that for years his two sons had not been on friendly terms with each other.

In May 1938 Mr. Lambert expressed concern about the future of the farm to Janet Lopez, whom he had met occasionally at Leroy's house. According to her testimony Mr. Lambert told her at that time that the farm should really go to Leroy who had worked there all his life, but that he did not want to execute any instrument to that effect for fear that, if the matter became known, Daniel would do him, the father, bodily harm. Miss Lopez, a notary public, thereupon suggested to him that he transfer the farm to Leroy by deed. This suggestion apparently met with his approval and she prepared a deed to that end.

On May 24, 1938 Mr. Lambert met Miss Lopez at Leroy's house where he signed the deed to Leroy and his wife. Miss Lopez and James A. Jardine, a farm hand, signed as witnesses. Upon execution of the deed Mr. Lambert hesitated to go further in the matter through fear that Daniel would learn of his doings when it was recorded. What followed is best related in Miss Lopez' own testimony in direct examination: "So, I said: 'Why not wait and record it at

your death?' He said: 'Can you do that?' I said: 'To the best of my knowledge, you can.' So, in my own hand-writing, I wrote: 'Only to be recorded at the death of Daniel Lambert.' " This notation was written "at the bottom of the deed."

In cross-examination Miss Lopez testified that when Mr. Lambert handed the deed to Leroy he directed him to "Put that in the Bible for safe keeping." She further testi-fied: "He wanted it kept within easy access for his own convenience * * * if he wanted to do anything else with it * * *. Q. Then it was your understanding that Daniel Senior could go there at any time and get the deed back? A. True. Q. Your answer is —— A. —— Yes." According to Miss Lopez, when Leroy received the deed from his father he said to him: "It will be there if you want it. It will be there," meaning in the Bible.

Leroy's testimony was substantially to the same effect. He testified that his father "brought over the family Bible and told me to put it [the deed] in that," with the additional instruction " 'As soon as you can, get it over to Mr. Little-field.' So, I did." The person just mentioned was Charles W. Littlefield, a member of the Rhode Island bar and a friend of Mr. Lambert, who had served with him in church affairs and had acted as his attorney on various occasions.

The testimony of James A. Jardine, the other witness to the deed, sheds no direct light on the immediate matter under consideration. However, the following question and answer have a bearing in determining Mr. Lambert's in-tention at the time he handed the deed to Leroy. "Q. Did he [Mr. Lambert] ever tell you what he proposed to do with the farm if anything happened to him? * * * A. He said, many times, *the farm was to be left to Leroy* in reward for his work on the farm all his life." (italics ours)

Within one month after the execution of the deed Leroy, acting through another attorney, brought a petition in the probate court of the city of Warwick for the appointment of a guardian over his father on the ground that the latter

lacked discretion in managing his estate and also that he was a person of unsound mind. The reason given by Leroy for bringing such petition was that since the homestead was in disrepair he wanted a guardian appointed "to prevent the whole estate from going to rack and ruin," the term "whole estate" meaning the buildings on the farm. Mr. Lambert apparently then had no personal property and none was left by him when he died. Judge Wilford S. Budlong granted the petition on August 11, 1938 and appointed Mr. Littlefield guardian. It is clear from Judge Budlong's testimony that he did not pass on the merits of the allegations in the petition but named a guardian because Mr. Lambert "wanted Mr. Littlefield appointed * * *." For reasons that will presently appear we note here specially that neither Judge Budlong nor Mr. Littlefield was in any way connected with the preparation, execution and delivery of the deed in question.

On January 18, 1939 Mr. Littlefield, with full knowledge of the contents of the deed from Mr. Lambert to Leroy and his wife and in actual possession thereof, brought an action of trespass and ejectment as guardian of the estate of Mr. Lambert against Daniel J. Lambert, Jr., the complainant here, to recover possession of the same premises described in that deed. In so far as appears from the present record the existence of the deed was not disclosed in the trespass and ejectment case. The result was that Daniel was finally evicted from the premises and Leroy moved into the homestead. The deed was not recorded until after Mr. Lambert's death on March 18, 1946.

We have examined the short rescript of the trial justice and find that his decision as to the validity of the deed is based upon a misconception of the evidence. With reference to that instrument he expressed himself as follows: "The testimony of both Mr. Littlefield and of Judge Budlong precluded any inference that the deed was not properly drawn, signed and delivered * * *." We have hereinbefore specifically noted that neither of these persons was in

any way connected with the preparation, execution and delivery of the deed. Mr. Littlefield testified he knew nothing about it until it was delivered to him by Leroy, and apparently Judge Budlong was completely without knowledge of its existence. It is because of such basic misconception of the evidence by the trial justice on the crucial point in this cause that we have summarized at considerable length the testimony of Miss Lopez, Leroy and Jardine with reference to the circumstances and conditions under which Mr. Lambert signed and delivered the deed.

It is well settled that a deed must take effect upon its execution and delivery, or not at all. *Johnson* v. *Johnson,* 24 R. I. 571. To constitute a valid delivery a grantor must at that time divest himself of all right and authority to control the deed; or, as stated in *Lockwood* v. *Rhode Island Hospital Trust Co.,* 62 R. I. 494, at page 497, "a grantor's present intent to absolutely divest himself of the title to the property by virtue of the deed is essential to a valid delivery." Possession of the instrument is a circumstance that may be of importance in determining the intention of the grantor at the time of delivery, but it is not necessarily controlling. *Oldham* v. *Oldham,* 58 R. I. 268, 277; *Wetherill* v. *Moore,* 73 R. I. 140. Whether there is a valid delivery ordinarily depends upon the facts of each case. Even though possession of the deed by a grantee is prima facie evidence of delivery there is no valid delivery in law where it appears that the grantor's intention was that notwithstanding such possession the deed should not take effect until his death. In such circumstances the deed is void as it is an attempt to make a testamentary disposition of property without complying with the statute of wills.

A careful consideration of all the evidence clearly shows that Mr. Lambert intended the deed to take effect only after his death; that until the happening of such event he intended to retain control of the deed in order that he might otherwise dispose of the farm if he so desired; that not-

withstanding the surrender of the manual possession of the deed he did not presently intend to part with the control thereof so as to divest himself absolutely of the title; and that in the circumstances a very essential element of legal delivery was lacking. For the reasons stated, we are of the opinion that the deed from Daniel J. Lambert, Sr. to Ethel W. Lambert and Leroy L. Lambert was void.

The complainant's appeal is sustained, the decree appealed from is reversed, and on January 3, 1951 the parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*William B. Sweeney, George Roche, Eugene J. Laferriere,* for complainant.

*Grim & Littlefield, Benjamin W. Grim,* for respondents.